IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA

UNITED STATES OF AMERICA,

       Plaintiff,

v.                                       Criminal Action No. 5:08CR26-02

JOSEPH M. KING,

       Defendant.

**REPORT AND RECOMMENDATION
THAT DEFENDANT KING'S MOTION TO SUPPRESS
BE GRANTED IN PART AND DENIED IN PART**

I. Introduction

   A.     Background

Defendant is one of two defendants in a one count indictment charging possession with intent to distribute marijuana.

   B.     The Motion

Defendant King's Motion to Suppress Statements.[1]

   C.     Recommendation

I recommend defendant King's Motion to Suppress Statements be **GRANTED IN PART AND DENIED IN PART** as follows: Defendant's volunteered statements and establishing his identity should not be suppressed. Defendant's responses to Special Agent Manchas' other questions should be suppressed.

---

[1] Doc. No. 52.

II. Facts

On March 28, 2008, postal inspectors and DEA agents intercepted a United States postal service package containing ten pounds of marijuana addressed to Michael Thompkins at 1068 McCulloch Street, Wheeling, West Virginia. The officers obtained a search warrant and installed an electronic alarm in the package. The electronic alarm was designed to emit a signal when the package was opened. Postal Inspector Celletti, acting as an undercover officer, dressed as a United States Postal Carrier and delivered the package to the address at 2:40 p.m. March 28, 2008. Defendant King identified himself as Michael Thompkins and signed for the package when it was delivered. The officers received a signal that the package was opened. The officers approached the residence. Co-defendant Saunders, standing in the doorway saw the officers and shut the door. A few seconds later Saunders opened the door and began to leave. The officers detained Saunders. The officers then entered the residence and announced "Police. Search Warrant." The officers searched the residence and found neither the package nor defendant King. The officers began a second search. The opened package was found behind a hot water heater on the second search of the residence. Near the package was a small door a few feet above the floor. The officers opened the door and found defendant King in a crawl space in the basement of the residence. Three officers, with weapons drawn, ordered defendant King out of the crawl space. Defendant King got out of the crawl space but did not respond to questions as to his identity and why he was in the crawl space. Defendant King was placed face down on the basement floor and was handcuffed. Defendant King was then taken to the top level (which is the entry level) of the residence. Inspector Celletti identified Defendant as the person who signed for the package and Co-defendant Saunders who was on a cell phone at the time of delivery of the package.

2

Defendant said to Manchas: "Why am I being arrested? Why am I handcuffed? I haven't done anything wrong. I shouldn't even be here. Leave me alone." These questions were repeated by the defendant three or four times before Manchas could respond and then the following conversation took place.

MANCHAS: Look, you are being detained. You are not under arrest. You are being detained for investigative reasons until we figure out what is going on. Did somebody just come to the door?

DEFENDANT: Yes, the mailman.

MANCHAS: Did he deliver a package?

DEFENDANT: Yes.

MANCHAS: Who was the package for?

DEFENDANT: Michael Thompkins.

MANCHAS: Do you know Michael Thompkins?

DEFENDANT: My buddy told me to say I was Thompkins and to sign the package in Thompkins' name.

MANCHAS: Well, what is your name?

DEFENDANT: Joseph Michael King.

All agree that when the foregoing conversation took place defendant King was handcuffed, being detained and had not been advised of his Miranda rights.

III. The Motion

A. Contentions of the Parties

Defendant King contends he was in custody, interrogated and was not read his Miranda rights. Therefore, any statement made in the basement in response to any interrogation is not admissible against him.

The Government contends there was no interrogation and that statements volunteered or initiated by a defendant in custody are not inadmissable under Miranda. The Government contends that casual conversations are not interrogation. The Government also contends that truthful statements about a defendant's predicament are not coercive and do not render the responses involuntary.

B. Discussion

Miranda v. Arizona, 384 U.S. 436, 444 (1966) defined interrogation as "questioning initiated by law enforcement officers." Miranda distinguished interrogation from volunteered statements which are not protected by the Fifth Amendment. Id at 478. Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980) defined interrogation by law enforcement officers to include both express questioning and any words or actions that the officers know are likely to get an incriminating response from a suspect.

The Government concedes defendant was in custody and that a Miranda warning is necessary if defendant is interrogated. The Government contends Manchas did not interrogate defendant.

Here, defendant asked a series of questions to Special Agent Manchas several times before Manchas could respond. Defendant wanted to know why he was handcuffed and why he was

being arrested.  Manchas finally replied by telling defendant to be quiet and that defendant was being detained.  Defendant continued to ask questions.  Manchas responded by asking defendant whether someone had just come to the door, delivered a package, addressed to whom, did he know Thompkins and what was defendant's name.  Defendant responded to all these questions.

Manchas' questions about whether someone had just come to the door, delivered a package, addressed to whom, did he know Thompkins and what was defendant's name were questions initiated by a law enforcement officer that appear to be interrogation as defined by Miranda.  Manchas' testimony that he was just responding to defendant's questions to calm defendant is certainly believable.  Nonetheless, those questions constitute interrogation under Miranda.  The Court believes that Manchas was not trying to circumvent Miranda by asking inappropriate questions and that Manchas' motives were not inappropriate.  However, Miranda requires that defendant's answers to the questions from Manchas about whether someone had just come to the door, delivered a package, addressed to whom, did he know Thompkins must be suppressed even though Manchas' motives are not suspect.  Manchas' asking defendant his name is a legitimate question and should not be suppressed.  Pennsylvania v. Muniz, 496 U.S. 582 (1990).

Finally, the statements volunteered by defendant (Why am I being arrested?  Why am I handcuffed?  I haven't done anything wrong.  I shouldn't even be here.  Leave me alone.)  Should not be suppressed.  Innis at 300.

C. Recommendation

I recommend defendant King's Motion to Suppress Statements be **GRANTED IN PART AND DENIED IN PART** as follows:  Defendant's volunteered statements and establishing

5

his identity should not be suppressed. Defendant's responses to Special Agent Manchas' other questions should be suppressed.

Any party who appears pro se and any counsel of record, as applicable, may, within ten (10) days from the date of this Report and Recommendation, file with the Clerk of the Court the written objections identifying the portions of the Report and Recommendation to which objection is made, and the basis for such objection. Failure to timely file objections to the Report and Recommendation set forth above will result in waiver of the right to appeal from a judgment of this Court based upon such Report and Recommendation.

The Clerk of the Court is directed to provide a copy of this Report and Recommendation to parties who appear pro se and all counsel of record, as applicable, as provided in the Administrative Procedures for Electronic Case Filing in the United States District Court for the Northern District of West Virginia.

DATED: September 5, 2008

/s/ *James E. Seibert*
JAMES E. SEIBERT
UNITED STATES MAGISTRATE JUDGE